# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CR-08-015-RAW |
| | ) |
| ALFONSO RASCON VASQUEZ, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The Defendant Alfonso Rascon Vasquez was indicted for possession of marijuana with intent to distribute pursuant to 21 U.S.C. § 841. The charge resulted from the discovery of approximately three hundred pounds of the illicit drug in the Defendant's motor home during a traffic stop on Interstate 35 in Love County, Oklahoma. The Defendant filed a Motion to Suppress and Motion for Hearing [Docket No. 18], which the District Judge referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned conducted a suppression hearing on March 10, 2008, and now recommends denial of the Motion to Suppress.

### A. Factual Background

On February 5, 2008, the Defendant was traveling north on Interstate 35 in Love County, Oklahoma when a state trooper pulled him over for "weaving all over the road." The Defendant was driving a motor home and exited the vehicle through a door on the passenger's side. The trooper asked him for his driver's license and inquired whether he had been drinking. The Defendant produced a Missouri driver's license, denied any drinking and

indicated he was having trouble controlling the motor home due to windy conditions. Because the Defendant did not appear to be intoxicated, the trooper did not administer a field sobriety test but instead took him to the patrol unit to issue a written warning. Upon questioning by the trooper, the Defendant indicated he was a truck driver on a one-month vacation and that he and his wife (the female passenger in the motor home) had been in San Antonio for five or six days and were headed home to Missouri. The trooper observed that the Defendant seemed extremely nervous; for example, the Defendant erroneously told the trooper that the motor home was a 1989 model and laughed inappropriately when he corrected his mistake. The trooper contacted dispatch for a check on the Defendant's driver's license, his criminal history and any outstanding warrants, and asked the Defendant for his registration and insurance verification because the motor home was carrying a Minnesota license plate. The Defendant indicated the information was in the motor home, so the trooper went to get it from the female passenger. She told the trooper she was the Defendant's girlfriend (not his wife), and that they had been in San Antonio for just a day (but in El Paso for a week before that) and that she was not sure where they were headed, but she thought it was Missouri. She tried to find the registration and insurance verification but eventually gave up and handed the trooper a large binder. He took it back to the patrol unit and asked the Defendant to find the documents. The trooper noticed that the Defendant was still extremely nervous; he was cleaning his glasses and rubbing them so that the trooper thought he might break them. The Defendant located the registration and insurance verification, and the trooper contacted dispatch for a check on the motor home's license plate. While waiting

for the results of this check, the trooper took his drug dog around the motor home. The dog alerted to the presence of narcotics near a vent on the passenger side, so the trooper told the Defendant he was going to search the motor home for drugs. The Defendant initially denied there was anything illegal in the motor home, but eventually admitted there was approximately three hundred pounds of "weed" inside. The trooper handcuffed the Defendant and searched the motor home. Under the bed he found five large black "hockey bags" full of plastic bags of marijuana. There were some three hundred bags weighing just over one pound each.

**B. Analysis**

The Defendant argues that the marijuana was illegally seized and should therefore be suppressed because: (i) the initial traffic stop of the motor home was illegal; and, (ii) the Defendant was unlawfully detained beyond the scope of the traffic stop. *See, e. g., United States v. Tibbetts*, 396 F.3d 1132, 1136 (10th Cir. 2005) ("We conduct a two-step inquiry when determining the constitutionality of a traffic stop, considering first whether the officer's action was justified at its inception, and second, whether it was reasonably related in scope to the circumstances that justified the interference in the first place."). *See also United States v. Rice*, 483 F.3d 1079, 1082 (10th Cir. 2007) ("Since a traffic stop itself is a seizure, the Fourth Amendment requires the stop to be justified at its inception and reasonably limited in scope."), *citing United States v. Holt*, 264 F.3d 1215, 1220 (10th Cir. 2001). Neither argument has merit, and the Defendant's Motion to Suppress should therefore be denied.

### 1. The initial traffic stop was lawful.

"[A] traffic stop 'is reasonable under the Fourth Amendment at its inception if the officer has either (1) probable cause to believe a traffic violation has occurred or (2) a reasonable articulable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.'" *United States v. Ramstad*, 308 F.3d 1139, 1144 (10th Cir. 2002), *quoting United States v. Ozbirn*, 189 F.3d 1194, 1197 (10th Cir. 1999). In this case, the trooper stopped the Defendant for violating 47 Okla. Stat. § 11-309, which requires that vehicles be driven "as nearly as practicable entirely within a single lane." The Defendant argues that such a stop was unreasonable under the Fourth Amendment because his failure to stay within a single lane in windy weather conditions constituted no violation of the statute, and cites *United States v. Gregory*, 79 F.3d 973 (10th Cir. 1996), in support of this argument. But *Gregory* is factually inapposite to this case.

The *Gregory* court determined that "an isolated incident of a vehicle crossing into the emergency lane of a roadway" did not violate a Utah statute similar to the one in issue here where "[t]he road was winding, the terrain mountainous and the weather condition was windy." *Id.* at 978. "However, decisions like *Gregory* do not establish an absolute standard or bright-line rule regarding what conduct constitutes a violation of statutes like [47 Okla. Stat. § 11-309], but instead highlight the need to analyze objectively *all the surrounding facts and circumstances* to determine whether the officer had the probable cause necessary to justify the stop." *Ozbirn,* 189 F.3d at 1198 [emphasis added], *citing Gregory,* 79 F.3d at 980.

Here, the only factor that coincides with *Gregory* is windy weather, which would not in and of itself obviate the reasonableness of a traffic stop for violating a statute such as 47 Okla. Stat. § 11-309. *See, e. g., United States v. Cline*, 349 F.3d 1276, 1287 (10th Cir. 2003) (finding facts distinguishable from *Gregory* and the officer had a reasonable articulable suspicion that a traffic violation had occurred when he observed the defendant swerve and nearly strike a bridge abutment on a day when there was a brisk wind).

Even more significant than this lone similarity are the factors that distinguish this case from *Gregory*. For example, the videotape of the traffic stop indicates that the roadway on which the Defendant was traveling was straight and not, as in *Gregory*, winding or mountainous. *See, e. g.*, *United States v. Dunn*, 1998 WL 8227, at *2 (10th Cir. Jan. 12, 1998) (finding facts distinguishable from *Gregory* and the officer had probable cause for the traffic stop when on a windy day he observed the defendant cross the line marking the edge of the lane and the road was straight with a slight grade but not winding or mountainous) [unpublished opinion]. Further, the defendant in *Gregory* swerved only once onto the shoulder of the road; here, the trooper not only observed the Defendant crossing the shoulder line but also the lane line at least twice. *See, e. g., United States v. Valenzuela*, 494 F.3d 886, 889 (10th Cir.), *cert. denied*, ___ U.S. ___ , 128 S. Ct. 636 (2007) ("[T]he movement of the vehicle in *Gregory* occurred toward the right shoulder of the road, so other traffic was in no danger of collision. In this case, Defendant moved his vehicle . . . into another lane of traffic, essentially straddling the lane divider for several seconds. This movement is more significant than the . . . lane drift under windy conditions described in *Gregory*. Detective

Baxter could have reasonably believed Defendant's actions . . . posed a serious risk of collision.") [citation omitted]. The undersigned Magistrate Judge therefore concludes that, notwithstanding *Gregory*, there was *at least* a reasonable suspicion that the Defendant had violated 47 Okla. Stat. § 11-309, and his traffic stop was therefore reasonable under the Fourth Amendment. *See, e. g., United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) ("An initial traffic stop is valid under the Fourth Amendment . . . if the officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring."), *citing United States v. Botero-Ospina,* 71 F.3d 783, 787 (10th Cir. 1995), *cert. denied*, 518 U.S. 1007 (1996).[1]

---

[1] The trooper's testimony suggests there was also a reasonable suspicion the Defendant was intoxicated, which would likewise justify a traffic stop. *See United States v. Zabalza*, 346 F.3d 1255, 1258 (10th Cir. 2003) ("[A]t a minimum, Sergeant Kummer's observations [of the defendant's vehicle crossing the center line twice] were 'sufficient to create a reasonable suspicion that [Zabalza] might be sleepy or impaired, and could present a risk of harm to himself and others.'"), *quoting Ozbirn*, 189 F.3d at 1199. *But see Gregory*, 79 F.3d at 978 (finding stop was not justified based on officer's reasonable suspicion that the defendant was impaired by alcohol because the officer testified he did not stop the defendant on that basis and he did not administer a field sobriety test after stopping him). The Defendant, on the other hand, suggests that the *real* reason he was stopped is because the trooper wanted to search for drugs; the Defendant elicited testimony, for example, that the trooper is part of a drug interdiction unit and issues many written warnings, *i. e.*, that he has no real interest in traffic enforcement. But even if this were so, the trooper's subjective motivation would be irrelevant where he had a reasonable suspicion that a traffic law had been violated. *See United States v. Patterson*, 472 F.3d 767, 775 (10th Cir. 2006) ("The standard is an objective one; 'it is irrelevant that the officer may have had subjective motives for stopping the vehicle.'"), *quoting Tibbetts*, 396 F.3d at 1137. *See also United States v. Gregoire*, 425 F.3d 872, 878 (10th Cir. 2005) ("Although Mr. Gregoire reminds us that the trooper was part of a Criminal Interdiction Team focusing on drug enforcement, stolen vehicles, and driving under the influence, . . . the subjective motivation of the trooper is not pertinent given the observed violation."), *citing Whren v. United States*, 517 U.S. 806, 818 (1996).

## 2. The Defendant was not unlawfully detained.

The Defendant also contends that the marijuana should be suppressed because its discovery resulted from an illegal detention, *i. e.*, that the trooper detained him beyond the scope of the initial traffic stop in order to conduct the canine sniff, *see, e. g., Illinois v. Caballes,* 543 U.S. 405, 407 (2005) ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."); *Rice*, 483 F.3d at 1082 ("A justifiable stop must not exceed the reasonable duration required to complete the purpose of the stop."), *citing United States v. Stewart*, 473 F.3d 1265, 1269 (10th Cir. 2007), without any reasonable suspicion of criminal activity. *See Hunnicutt*, 135 F.3d at 1349 ("[T]he officer may detain the driver for questioning unrelated to the initial traffic stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring."), *citing United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir. 1993). The government has the burden of proof on both points, *see United States v. Tkachenko*, 2005 WL 2133713, at *3 (10th Cir. Sept. 1, 2005) ("The government bears the burden to demonstrate that an investigative detention was sufficiently limited in scope and duration, and, in the alternative, that the officer possessed reasonable suspicion of criminal activity.") [unpublished opinion], *citing Holt*, 264 F.3d 1215, and the undersigned Magistrate Judge finds that it has been met.

First, the canine sniff occurred well within the scope of the Defendant's initial traffic stop. *See Tkachenko*, 2005 WL 2133713, at *4 ("Absent a dog sniff, the traffic stop would have taken the same amount of time. Thus the court finds that the dog sniff in this case

began and ended during the course of a lawful traffic stop, which was not unreasonably extended beyond the time reasonably required to complete that mission."). *See generally Caballes,* 543 U.S. at 409 ("In this case, the dog sniff was performed on the exterior of respondent's car while he was lawfully seized for a traffic violation. Any intrusion on respondent's privacy expectations does not rise to the level of a constitutionally cognizable infringement."); *United States v. Morales-Zamora,* 914 F.2d 200, 203 (10th Cir. 1990) ("Because the defendants' vehicles were not detained beyond the measure of time required for the officer to complete his examination of the defendants' documents, the purpose for which we assume the defendants were lawfully detained, we hold that there was not a 'seizure' of the defendants' vehicles for purposes of facilitating the canine sniff."). During a traffic stop, an officer may ask for a driver's license, vehicle registration and insurance verification, and conduct appropriate computer checks. *See, e. g., United States v. Gregoire*, 425 F.3d 872, 879 (10th Cir. 2005) ("In a routine traffic stop, a trooper may request a driver's license, vehicle registration and other required papers, run necessary computer checks, and then issue any warning or citation."), *citing United States v. Rosborough*, 366 F.3d 1145, 1148 (10th Cir. 2004); *United States v. Cervine*, 347 F.3d 865, 871 (10th Cir. 2003). He may also "question the vehicle's occupants regarding their identities, travel plans, and ownership of the vehicle." *United States v. Zabalza*, 346 F.3d 1255, 1259 (10th Cir. 2003), *citing United States v. Rivera*, 867 F.2d 1261, 1263 (10th Cir. 1989). *See also United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005) (holding that an officer may ask about travel

plans and vehicle ownership during an otherwise lawful traffic stop).[2]  The trooper here did all of this, and conducted the canine sniff of the motor home while he was doing it, *i. e.*, he walked his drug dog around the motor home while he was awaiting a response from dispatch as to the results of the computer check on the motor home's license plate.

It is perhaps arguable that the trooper could have performed these tasks in a more organized or timely manner.  *See, e. g., Holt*, 264 F.3d at 1230 ("[A] traffic stop . . . must be judged by examining both the length of the detention and the manner in which it is carried out.").  For example, the trooper could have asked for the registration and insurance verification when he asked for the Defendant's driver's license, and he could have run the license plate when he initially contacted dispatch to run computer checks.  "However, [a court] need not make a time and motion study of traffic stops; we consider the detention as a whole and the touchstone of our inquiry is reasonableness."  *Patterson*, 472 F.3d at 776.  In determining whether the detention prior to the canine alert was unreasonable, a court "must consider the individual circumstances that confronted the troopers, using 'common sense and ordinary human experience' to determine whether 'the police acted less than

---

[2]   The trooper did, of course, question the Defendant and his girlfriend about other matters, *e. g.*, what he did for a living and whether she was his wife.  But there is no indication that such questioning prolonged the traffic stop in and of themselves.  *See, e. g., United States v. Wallace*, 429 F.3d 969, 974 (10th Cir. 2005) ("As long as the trooper's questioning did not extend the length of the detention, . . . there is no Fourth Amendment issue with respect to the content of the questions."), *citing United States v. Santos*, 403 F.3d 1120, 1132 n.6 (10th Cir. 2005).  *See also Muehler v. Mena*, 544 U.S. 93, 101 (2005) ("[M]ere police questioning does not constitute a seizure.") [quotation omitted]; *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1259 (10th Cir. 2006) (finding that questions "[were] not limited to travel plans and ownership of the vehicle," but they were not improper because they did not "appreciably lengthen the detention[.]") [citation omitted].

diligently, or . . . unnecessarily prolonged [the] detention.'" *Id.*, *quoting United States v. Sharpe*, 470 U.S. 675, 685-86 (1985) ("In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."). There is no indication here that the trooper handled the traffic stop the way he did to prolong it, *e. g.*, to give himself time to conduct the canine sniff. In any event, barely sixteen minutes elapsed from the time the trooper stopped the Defendant until the time he conducted the canine sniff.[3] The undersigned Magistrate Judge does not find that such a detention is unreasonable, even for the purpose of issuing a written warning, *see*, *e. g.*, *id.* at 777 (holding that a "13 minute and 27 second detention was not unreasonable."); *see also Tkachenko*, 2005 WL 2133713, at *4 (holding that a "total duration of time from the initial traffic stop to the dog alert . . . [of] 16 minutes" was reasonable), so the canine sniff occurred within the scope of the initial traffic stop.[4]

---

[3] The entire traffic stop was recorded by the troopers in-car camera. The recording contained a running time indicator, which reflected that the Defendant was stopped at approximately 1:33 p.m. The Defendant got into the trooper's patrol unit at 1:34. The trooper received his first response from dispatch at 1:39, and he asked the Defendant for his registration and insurance verification at 1:41. He went to get these documents from the female passenger at 1:43, and returned to the patrol unit with the binder at 1:45. The Defendant located the documents at 1:47. The trooper requested the license plate check at 1:48, but he did not receive a response until after he had conducted the canine sniff. This commenced at 1:49 and concluded when the drug dog alerted at 1:50. The Defendant was in handcuffs by 1:53, just twenty minutes after he was initially stopped.

[4] The trooper testified that his dog alerted to the Defendant's motor home, and the videotape of the traffic stop indicates that he did. The Defendant does not challenge the alert, and he does not contend that the alert was insufficient to provide probable cause to search the motor

Second, even if the trooper *did* detain the Defendant beyond the scope of the initial traffic stop in order to conduct the canine sniff, such additional detention was supported by a reasonable suspicion of criminal activity. *See, e. g., Hunnicutt*, 135 F.3d at 1349 ("[T]he officer may detain the driver for questioning unrelated to the initial traffic stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring."), *citing Soto*, 988 F.2d at 1554. Reasonable suspicion "requires considerably less than proof of wrongdoing by a preponderance of the evidence, but something more than an inchoate and unparticularized suspicion or hunch." *United States v. Melendez-Garcia*, 28 F.3d 1046, 1051 (10th Cir. 1994) [quotation omitted]. The totality of the circumstances must be considered. *See United States v. Shareef*, 100 F.3d 1491, 1505 (10th Cir. 1996), *citing United States v. McRae*, 81 F.3d 1528, 1534 (10th Cir. 1996). An officer's conduct is judged "in light of common sense and ordinary human experience," but deference is accorded "to an officer's ability to distinguish between innocent and suspicious actions." *United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir. 2001), *cert. denied*, 535 U.S. 1019 (2002) [quotation and citation omitted].

The trooper's observations here gave rise to a reasonable suspicion the Defendant was engaged in criminal activity. First, he remained extremely nervous throughout the traffic stop, *e. g.*, he nervously rubbed his eyeglasses so hard they might break even after he was told he was receiving a written warning. *See*, *e. g.*, *id.* at 1268 (finding that although

---

home. *See Stewart*, 473 F.3d at 1270 ("A canine alert gives rise to probable cause to search a vehicle.") [quotation omitted].

"nervousness is of limited significance in determining whether reasonable suspicion exists. . . . [e]xtreme and continued nervousness . . . is entitled to somewhat more weight.") [quotations omitted]. Second, the Defendant and his female passenger told inconsistent stories regarding their travel plans, *e. g.*, the Defendant told the trooper they had stayed in San Antonio for five to six days while the passenger indicated they had stayed for only one day, *see*, *e. g.*, *United States v. Mendez,* 118 F.3d 1426, 1431 (10th Cir. 1997) ("[C]ontradictory or implausible travel plans can contribute to a reasonable suspicion of criminal activity.") [citation omitted], and about their relationship, *i. e.*, the Defendant told the trooper that the passenger was his wife, but she said she was his girlfriend. *See United States v. Kopp*, 45 F.3d 1450, 1453-54 (10th Cir.), *cert. denied*, 514 U.S. 1076 (1995) (noting that inconsistent statements regarding travel plans and relationship of driver and passenger were relevant factors, among others, in providing reasonable suspicion sufficient to justify detention for drug dog sniff). Third, the Defendant omitted (although the passenger did not) the information that they had come from El Paso, which the trooper identified as a source point for illegal drugs. *See*, *e. g.*, *Williams*, 271 F.3d at 1270 (noting "that answers to questions suggesting an individual is concealing the fact that he rented a car in a known drug source area can give rise to suspicion.") [quotation omitted]. Fourth, the motor home carried a Minnesota tag, but the Defendant's driver's license was from Missouri. *See, e. g., United States v. Pena*, 920 F.2d 1509, 1514 (10th Cir. 1990), *cert. denied*, 501 U.S. 1207 (1991) (noting that car with California license plate being driven by a driver licensed in Illinois, among other factors, supported a finding of reasonable suspicion for further detention beyond

the initial stop to determine if the car was stolen). Finally, the Defendant told the trooper he was on a month-long vacation (which the trooper thought was unusual for a truck driver), although this factor may have had only limited significance in and of itself. *See United States v. Wood*, 106 F.3d 942, 947 (10th Cir. 1997) (finding that unemployed painter's report that he was on six week vacation did not rise to reasonable suspicion of criminal activity because he "may have saved money for the trip; he may have been the donee of a wealthy relative or acquaintance; he might have won the lottery or not yet exceeded the credit line on his VISA card.").

In any event, the test focuses not on any one factor, but instead on the "totality of the circumstances." The undersigned Magistrate Judge finds such factors taken as a whole were sufficient to create a reasonable suspicion the Defendant was engaged in criminal activity. The trooper was therefore justified in detaining the Defendant for further investigation, including a canine sniff of the Defendant's motor home. *See Tkachenko*, 2005 WL 2133713, at *5 ("[T]he court finds that in the event the traffic stop was extended beyond the time necessary to issue a warning ticket and to conduct ordinary inquiries incident to this traffic stop, the dog sniff was supported by reasonable suspicion."). The subsequent discovery of the marijuana was therefore lawful, and suppression thereof is unwarranted.

### C. Conclusion

In summary, the initial traffic stop of the Defendant was supported by reasonable suspicion he was violating 47 Okla. Stat. Ann. § 11-309. He was not detained beyond the scope of that traffic stop by the canine sniff conducted by the trooper, and even if he was, the

additional detention was supported by a reasonable suspicion the Defendant was engaged in criminal activity. The subsequent search of the Defendant's motor home and the seizure of the marijuana found therein were therefore lawful, and suppression of the marijuana is unwarranted.

Accordingly, the undersigned Magistrate Judge PROPOSES the findings set forth above and RECOMMENDS that the Defendant Alfonso Rascon Vasquez's Motion to Suppress [Docket No. 18] should be in all things DENIED. If there are any objections to this Report and Recommendation, they must be filed within ten days of service hereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

IT IS SO ORDERED this 14th day of March, 2008.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**